IN THE CIRCUIT COURT FOR THE TWELFTH JUDICIAL CIRCUIT IN AND FOR SARASOTA COUNTY

DAYNA R. PREVOST,

    Employee,

v.                                       Case No.:

DEPARTMENT OF CHILDREN
AND FAMILIES,

    Agency.

_____/

## COMPLAINT

Plaintiff, DAYNA R. PREVOST, by and through her undersigned counsel, hereby sues Defendant, DEPARTMENT OF CHILDREN AND FAMILIES, a subdivision of the State of Florida, and would allege as follows:

### Jurisdiction and Venue

1. This is an action for injunctive and monetary relief in excess of $15,000, exclusive of attorneys' fees and costs, for violations of the Americans with Disabilities Act of 1990, as Amended ("ADAA"), 42 U.S.C. §§ 12101 *et seq.*, 29 CFR Parts 1630 and 1602, *et seq.*; and the Florida Civil Rights Act of 1992, Fla. Stat. § 760.01, *et. seq.*

2. This Court has jurisdiction pursuant to Fla. Stat. § 26.012 and 42 U.S.C. § 12202.

3. Venue is proper in Sarasota County pursuant to Fla. Stat. § 47.011, as the Defendant is located in Sarasota County.

4. Defendant, DEPARTMENT OF CHILDREN AND FAMILIES ("DCF"), is an agency subdivision of the State of Florida.

5. Plaintiff, DAYNA R. PREVOST ("Mrs. Prevost") was, during the period relevant to this action, an employee of DCF.

### General Allegations

6. Plaintiff Mrs. Prevost began employment with Defendant DCF on January 11, 2008, as a Child Protective Investigator (CPI).

7. In her role as a CPI, Plaintiff was required to travel to, observe, and investigate situations and events in which the health and safety of children may be threatened. In many cases, she was faced with investigating instances of serious child abuse and violence, as well as sexual abuse and death of children.

8. On September 19, 2009, Plaintiff was assigned to and was working on a case that involved five children being brutally murdered by their own father. The children had been present for and witnessed sexual assault and battery of their mother at the hands of their father in several instances prior to the eventual murder by the father.

9. As a result of her experiences being faced with the grisly and horrific nature of the case and the psychological trauma associated with her involvement therewith, Plaintiff began to suffer from Post-Traumatic Stress Disorder ("PTSD").

10. In January of 2010, Plaintiff was transferred to the position of "Court Specialist," a role in which she spent the majority of her time appearing in and preparing for court hearings in cases in which legal action is necessary. However, in this role, Plaintiff was still involved with investigating some cases.

11. Plaintiff was thereafter, in January, 2012, presented with a case that was very similar in nature to the 2009 case that triggered her PTSD. As a result, Plaintiff suffered a re-triggering of her PTSD and advised her supervisors that she was unable to perform her job responsibilities on that specific January, 2012 case.

12. Initially following the January, 2012 case, Plaintiff was placed on administrative leave and presented an informal request for accommodation related to her PTSD.

13. Almost immediately thereafter, Plaintiff was sent by the Defendant for a "Fitness for Duty" independent medical examination ("IME") by a psychological evaluator.

14. That testing, conducted by Dr. Stephen Schengber, confirmed Plaintiff's diagnosis of PTSD and noted that:

> Therefore, it is my professional clinical opinion, based on a reasonable degree of psychological and neuropsychological probability, that Mrs. Prevost is unfit for duty, due to the fact that she cannot perform all of her job functions; in that she is refusing to comply with her supervisor's request to accept certain assigned cases. *However, if the agency is able to comply with her formal request for an accommodation which would allow her to refuse certain case [sic], then she would be fit for duty.*

15. Therefore, Defendant's own evaluating physician agreed that Plaintiff was, in fact, able to perform the essential functions of her job with an accommodation. However, it should be noted that the accommodation request as relayed by Dr. Schengber is inaccurate.

16. An administrative complaint was filed with the Florida Commission on Human Relations by Mrs. Prevost on or about May 21, 2012. The Florida Commission on Human Relations issued a determination of "no cause" on or about November 2, 2012. An administrative hearing on the appropriateness of the termination of Mrs. Prevost's employment was undertaken on November 5, 2012 by the Florida Public Employees Relations Commission (PERC).

17. These administrative complaints were undertaken as a statutory pre-requisite to the bringing of this action pursuant to Fla. Stat. § 760.07.

18. On or about July 24, 2012, as a result of the interactive process (whereby the employee and employer work under the ADAA to collaboratively arrive at a mutually agreeable accommodation for a disabled employee), Mrs. Prevost requested of her employer, the Florida Department of Children and Families the following accommodation:

> [Mrs. Prevost] would request an accommodation in the form of a change in employment policies and guidelines providing that, in certain investigation cases too similar in nature to that which initially caused the inception of [Mrs. Prevost]'s PTSD (which [Mrs. Prevost] will be able to identify by reviewing the case file and notes), a person be available in order to conduct interviews of the minor children involved in that specific case, as well as available to make the immediate decision as to whether those minor children should be removed from the home for their protection and to make the determination of the services being provided for the children's protection at that time.
>
> [Mrs. Prevost] would continue to be responsible for all follow-up work and documentation, completing all paperwork and forms associated normally with CPI cases, perform ongoing safety assessments and collateral contacts, conduct alleged perpetrator interviews (of adults), and perform ongoing court work, shelter petitions, and the like.
>
> The criteria for cases which [Mrs. Prevost] will need assistance on include the following:

     1.  Any case where child death results from domestic violence.

--or-- cases where all or substantially all of the following are present:

     2.  A domestic violence report involving 5 children;

     3.  A domestic violence report in which the mother was brutally assaulted by the father, to include battery and rape, where the children were present;

     4.  The children knew to hide in their room and remain quiet during the brutal assault to avoid being the father's next target;

     5.  The children had the ability to leave the home or call law enforcement but did not because they were afraid of being the father's next target;

     6.  The children do not discuss the violence in the home with anyone, to include family and friends, for fear of retaliation by the father; and

     7.  The family of the mother is not aware of the brutal violence in the home.

  19.  Essentially, Mrs. Prevost sought as an accommodation the ability to "opt out" of a specific case if the facts of that case were very closely related to the facts of the 2009 case that caused her PTSD.

  20.  Defendant DCF already had in place and had employed a system where child protective investigators similarly could (and were, in fact required to) opt out of a specific case if the investigator had a personal relationship (including social relationships) with one of the parties.

  21.  Rather than allow the requested accommodation, the Defendant asked that Mrs. Prevost accept an assignment transfer in-lieu of allowing her to continue in a job that she had performed diligently and nearly without fail for approximately four years.

  22.  However, the transfer position which the Defendant suggested to Mrs. Prevost represented not only a demotion in terms of job responsibility but also a reduction in pay. This reduction in pay was exacerbated by approximately ninety miles and two hours in additional unreimbursed travel per day, which equaled a total reduction in effective pay of approximately 33 percent (not including ten extra unreimbursed travel hours away from her family per week).

23. After a continued refusal by Defendant to provide any reasonable accommodation to the Plaintiff, Mrs. Prevost's employment was terminated by the Defendant DCF on September 21, 2012 from her position as a Child Protective Investigator ("CPI") as a result of her "[i]nability to Perform Assigned Duties;" "[s]pecifically, [refusal] to handle certain abuse cases or to interview certain clients because of Post-Traumatic Stress Disorder (PTSD), which developed due to a traumatic experience from a previous abuse case that ended tragically." A true and correct copy of the Final Action to Dismiss from Employment is attached hereto as Exhibit "A."

24. However, Mrs. Prevost could and did competently perform every work task presented to her in the course of her employment save one instance—the February 7, 2012 case. In that instance she did refuse to perform her work assignment —on the basis of a medical inability to perform that task—and requested an accommodation in response.

25. Mrs. Prevost continued to operate in her CPI position in the two and one-half months following the February 7, 2012 case that presented her with PTSD flashback symptoms and until she was reassigned following release of her IME. Dayna remained in her current position, essentially under the same conditions she sought as an accommodation, during that period even after the so-called refusal to perform work assignments took place.

26. During the interactive process, Plaintiff continued to undergo therapy with her treating psychologist, Dr. Cheryl Kasprzak. Dr. Kasprzak recommended a return to full duty on July 9, 2012, subsequent to DCF's fitness for duty IME.

27. DCF did not order a subsequent fitness for duty IME, though it had the opportunity to do so.

28. Defendant (in the PERC administrative hearing) confirmed that Mrs. Prevost's employment was terminated not necessarily as a result of that one instance, but because of Mrs. Prevost's prospective inability to perform her job functions in certain instances.

29. Further, on information and belief, no other CPI, to their knowledge, had ever been terminated for one instance of medical inability to perform the employee's job function.

30. In the approximately thirty (30) months after developing and being diagnosed with PTSD, only one case with factors virtually identical to those of the September, 2009 case had presented itself, rendering Plaintiff unable to complete her work assignments.

31. Mrs. Prevost's medical inability to perform job requirements may never reoccur, and Drs. Schengber (the IME psychologist) and Kasprzak (Mrs. Prevost's treating psychologist) in their respective reports, together indicated that it was impossible to predict when another identical case may present itself or even whether such a case would ever present itself again.

32. No children or families would be put in danger in the event Plaintiff's accommodation was granted and in the event that Plaintiff ever did encounter a similar case in the future.

33. No threat to children would be presented or increased by any future inability to perform those limited services which were the subject of Mrs. Prevost's accommodation request, as CPI employees are not permitted to prevent physical threats or violence to children—this is a function of law enforcement.

34. Further, provisions are already in place for the coverage of CPI employees suffering from a medical or other emergency resulting in an inability to perform work functions, even in the instance of "night call."

35. Therefore, even if Mrs. Prevost is unable in the future to perform her job functions in a case virtually identical to the 2009 case (which may never happen), the mechanism to provide a replacement investigator or supervisor for coverage is already available and in place.

36. The Agency cannot claim that the mere possibility that Mrs. Prevost may, in the future, require some assistance in the performance of some of her job functions (which is not certain to occur) would prevent her from continuing her employment as a CPI.

37. In sum, Mrs. Prevost can perform her job functions and assignments and expects impediments to her ability to do so in no greater degree than those facing other CPI's as a result of medical or other emergency conditions.

38. Further, DCF cannot assert or prove that any future inability to perform is likely—much less certain—to occur.

39. DCF has conceded in the PERC hearing that the January, 2012 inability to perform job responsibilities on the part of Mrs. Prevost is not, in and of itself, the basis for her termination. Rather, the unconfirmed possibility that a future episode may occur was instead the basis for Mrs. Prevost's termination. This basis is improper.

40. Therefore, DCF knew or should have known that termination of Mrs. Prevost's employment was improper and took action to terminate her employment in spite of her known constitutional rights to be free from discrimination on the basis of disability or from retaliation for exercising rights related to her disability

41. Defendant DCF has exhibited a history, pattern, and practice of discrimination against persons with disabilities in the role of Child Protective Investigators. Ms. Jan Gregory ("Ms. Gregory"), Deputy Regional Director of DCF, has testified that she was unaware of a single instance in 26 years of her employment with DCF overseeing hundreds or thousands of CPIs of having employed a disabled person or having accommodated a person with disabilities in a CPI position.

## COUNT I – FAILURE TO MAKE A REASONABLE ACCOMMODATION

42. Plaintiff hereby reincorporates the foregoing paragraphs numbered 1 through 41 and reasserts same as though fully set forth herein.

43. To make a reasonable accommodation claim under the ADAA, Prevost has the burden to show: (1) that she suffers from a disability, as defined by the ADAA; (2) that she is an otherwise qualified individual, meaning that she is nevertheless able to perform the essential functions of her job, either with or without reasonable accommodation; and (3) that her employer knew of her disability and did not reasonably accommodate it. Americans with Disabilities Act of 1990, §§101(8), 102(a), (b)(5)(A), 42 U.S.C.A. §§ 12111(8), 12112(a), (b)(5)(A).

44. An accommodation is "reasonable" and necessary under the ADAA only if it enables the employee to perform the essential functions of the job. See: *William L. Lucas v. W.W. Grainger, Inc.*, 257 F. 3d 1249, 11 A.D. Cases 1761, 21 NDLR 70, 14 Fla. L. Weekly Fed. C 991. The ADAA may require an employer to restructure a particular job by altering or eliminating some of its marginal functions, though employers are not required to transform the position into another one by eliminating functions that are essential to the nature of the job as it exists. *See: Lucas*, 257 F. 3d 1249.

45. The Florida Civil Rights Act of 1992, Fla. Stat. § 760.01, *et. seq.* ("FCRA") makes it illegal for an employer to:

> discharge or to fail or refuse to hire any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, national origin, age, handicap, or marital status.

§ 760.10, Fla. Stat.

46. As this District has observed, "Florida courts construe the FCRA in conformity with the federal Americans with Disabilities Act." *Lenard v. A.L.P.H.A. "A Beginning" Inc.*, 945 So. 2d 618, 621 (Fla. 2d DCA 2006).

47. Mrs. Prevost, during the period relevant to this action, suffered from a disability, as defined by the ADAA, in that her disability (PTSD) substantially limits one or more major life activities—rendering her "[s]ignificantly restricted as to the condition, manner or duration under which [she] can perform a particular major life activity as compared to the condition, manner and duration under which the average person in the general population can perform that same major life activity." *See, Lenard v. A.L.P.H.A. "A Beginning" Inc.*, 945 So. 2d 618, 621 (Fla. 2d DCA 2006).

48. Mrs. Prevost was an otherwise qualified employee, meaning that she was nevertheless able to perform the essential functions of her job, either with or without reasonable accommodation.

49. While Mrs. Prevost is disabled within the meaning of the ADAA, she can perform most, if not all, of the essential functions of her job without accommodation. Mrs. Prevost is able to perform the essential duties of a CPI with a reasonable accommodation.

50. A request for reasonable accommodation was made upon the Defendant employer.

51. Mrs. Prevost required an accommodation only in instances similar to that which occurred only one time in approximately 28 to 30 months.

52. The accommodation requested was not an undue burden on the Defendant, as the mechanism for accommodation was already in place and it was unclear when—if ever—Mrs. Prevost would need to avail herself of it.

53. Mrs. Prevost's requested accommodation is reasonable and does not impose upon the Defendant an undue burden.

Case 2:14-cv-00353-SPC-MRM   Document 2   Filed 06/13/14   Page 9 of 10 PageID 15

54. The Defendant, Mrs. Prevost's employer, knew of her disability and failed or refused to grant her a reasonable accommodation.

55. DCF's offer of a substitute accommodation of an Economic Self Sufficiency Specialist I ("ESS – I") position was not reasonable and represented a substantial reduction in effective pay. Therefore, Mrs. Prevost was not required to avail herself of that option.

**WHEREFORE**, Plaintiff respectfully requests this Court enter judgment in her favor finding violations of the Americans with Disabilities Act of 1990, as Amended and the Florida Civil Rights Act through failure to grant accommodations by the Defendant, awarding Plaintiff her reasonable attorneys' fees and costs, as well as any other and further relief as this Court may find just and proper.

## COUNT II – RETALIATION

56. Plaintiff hereby reincorporates the foregoing paragraphs numbered 1 through 41 and 43 through 55 and reasserts same as though fully set forth herein.

57. The ADAA makes it illegal to retaliate against an employee for exercising rights under the ADAA or for participating in an investigation into allegations related to the ADAA under 42 U.S.C. § 12203 *et seq*.

58. The same behavior is prohibited under the FCRA. The Florida Civil Rights Act of 1992, Fla. Stat. § 760.01.

59. DCF has conceded that the January, 2012 inability to perform job responsibilities on the part of Mrs. Prevost is not, in and of itself, the basis for her termination. Ms. Elizabeth Pasek, Regional Operations Manager for Family Safety for the defendant stated regarding termination of Mrs. Prevost's employment:

> After ongoing refusal and inability, knowing that Ms. Prevost was stating she could not fully do the functions of her job, yes, I agreed that we should pursue termination at that point because -- due to those circumstances.
>
> . . . .
>
> And what I previously said was I was not aware -- or no other instances came up prior to February of 2012. So to the best of my knowledge, there was no other incidents.

60. Despite its attempt to frame the termination of Mrs. Prevost's employment on the basis of refusal to perform work assignments, the Defendant actually terminated Mrs. Prevost on

the basis of her request for accommodation and her seeking to enforce her right to that accommodation through administrative complaint to the Florida Commission on Human Relations ("FCHR") and the Equal Employment Opportunity Commission ("EEOC").

61. Further, the inconsistency between the stated reason for adverse employment action against Mrs. Prevost and the reason stated by management for the Defendant reveal both pretext for its discriminatory conduct and direct evidence of its retaliatory intent.

62. The requirements of the ADAA and FCRA are known to the Defendant. Therefore, DCF knew or should have known that termination of Mrs. Prevost's employment was improper.

WHEREFORE, Plaintiff respectfully requests this Court enter judgment in her favor finding violations of the Americans with Disabilities Act of 1990, as Amended and the Florida Civil Rights Act through retaliation by the Defendant, awarding Plaintiff her reasonable attorneys' fees and costs, as well as any other and further relief as this Court may find just and proper.

May 14, 2014

        ICARD, MERRILL, CULLIS, TIMM,
        FUREN & GINSBURG, P.A.
        2033 Main Street, Suite 600
        Sarasota, Florida 34237
        (941) 366-8100 Telephone
        (941) 366-6384 Facsimile

        _____
        JOSEPH M. HERBERT, ESQ.
        Florida Bar No. 84260
        jherbert@icardmerrill.com