UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DAYNA R. PREVOST,

       Plaintiff,

v.                              Case No:  2:14-cv-353-FtM-38DNF

DEPARTMENT OF CHILDREN AND
FAMILIES,

       Defendant.
_____/

## ORDER[1]

This matter comes before the Court on Defendant Department of Children and Families' Motion for Final Summary Judgment (Doc. #29) filed on June 1, 2015. Plaintiff Dayna R. Prevost filed a response in opposition on June 23, 2015. (Doc. #37). This matter is ripe for review.

### Undisputed Facts[2]

This is an employment discrimination case. Plaintiff Dayna R. Prevost, the employee, sues Defendant Department of Children and Families ("DCF"), the employer. (Doc. #17). The counts are failure to make a reasonable accommodation (Count I) and retaliation (Count II) pursuant to the Americans with Disabilities Act ("ADA") of 1990.

---

[1] Disclaimer: Documents filed in CM/ECF may contain hyperlinks to other documents or Web sites. These hyperlinks are provided only for users' convenience.  Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees.  By allowing hyperlinks to other Web sites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites.  Likewise, the Court has no agreements with any of these third parties or their Web sites.  The Court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.
[2] At times in its motion, DCF relies on Prevost's allegations for its undisputed facts section. As such, it appears DCF adopts these allegations as true undisputed facts.

Prevost worked for DCF for about four and a half years as a Child Protective Investigator ("CPI") with additional duties as a Court Unit Specialist ("CUS"). (Doc. #29-1, at 6-8). As a CPI, Prevost was responsible for investigating allegations of abuse of children in Collier County, Florida. (Doc. #29-1, at 6; Doc. #29-4, at 37; Doc. #37-1, at 34). As a CUS, Prevost was required to attend court hearings, mediations, and relay information from the investigation unit to the social working unit of DCF. (Doc. #29-1, at 8; see also Doc. #29-4, at 32). Prevost was employed under Beth Pasek, a DCF Regional Operations Manager, among others. (Doc. #37-1, at 32; see also Doc. #29-1, at 7-8, 15).

In light of her CPI and CUS responsibilities, Prevost was assigned to cases at random. (Doc. #29-1, at 10). In general, upon assignment of a case, Prevost read the allegations in an intake report, obtained clarification from the reporter, interviewed the child at issue, and interviewed the accuser at issue. (Doc. #29-1, at 10-11). Prevost also conducted home studies, created safety plans, and created case plans. (Doc. #29-1, at 13). While Prevost worked in the courtroom in light of her CUS responsibilities, she was not assigned to cases that required attention within four hours. (Doc. #29-1, at 9).

In 2009, Prevost worked on a serious case in which five children were murdered by their father. (Doc. #17, at ¶12; Doc. #33-2). Thereafter, Prevost suffered from post-traumatic stress disorder ("PTSD"). (Doc. #17, at ¶13).

Prevost explained in deposition testimony that after the 2009 incident, certain cases, such as domestic violence cases, triggered her PTSD symptoms. (Doc. #29-1, at 18-19; see also Doc. #29-1, at 31). Her PTSD symptoms included crying, panic attacks, feeling as if she could not breath, and feeling as if she was going to faint. (Doc. #29-1, at 18-19). These symptoms persisted for one to two hours at a time. (Doc. #29-1, at 18).

In February 2012, Prevost was asked to interview children who may have been abused. (Doc. #29-1, at 28, 30). Prevost refused. (See Doc. #29-1, at 28 (in an email dated February 2012, Prevost wrote, "I will not interview these children. You will have to write me up."); but see (Doc. #29-1, at 30 (in an email dated January 28, 2012, and after being asked to interview two children at or near their school, Prevost wrote, "I have not hidden from anyone that this case gives me a panic attack. I should not be involved in the day to day contact with the family.")). Then, Prevost was written up. (Doc. #29-1, at 16).

In March 2012, Prevost completed a Request for Reasonable Accommodation form, a form Prevost attained from the DCF website. (Doc #29-1, at 23; see Doc. #29-1, at 33). Prevost requested job restructuring, part time or modified work schedule, and modification to a rule, policy, or practice. (Doc. #29-1, at 33). Prevost specifically stated and requested the following:

> 1. Please describe the nature of your limitations. What life activity(ies) is affected and how is this life activity(ies) substantially limited?
>
>> I live in fear of reliving the trauma I experienced at work again. I find it difficult to deal with spontaneous decision making and have a hard time dealing in crisis. I feel that without a measured level of thought process, I may appear indecisive which effects my credibility as a person.
>
> 2. How does it affect your ability to perform the essential functions of your job?
>
>> I need to make contact with families to address abuse and neglect while determining safety to a child as a first point of contact in a crisis situation. My fear and thought process may appear to others as being unable to perform my job in a crisis setting which could affect child safety. Spontaneous decision making and crisis intervention would be difficult due to the trauma I endured while in this position.

> 3. . . . Please describe in detail the accommodation you are requesting.
>
>> I am requesting no immediate (crisis intervention) contact with families to [] address initial allegations of abuse or neglect requiring as a first point of contact. I feel confident that if the initial risk was assessed in the crisis situation by another staff person, I could confidentially move the case forward to closure. If I am not confident in my abilities, I am requesting permission to express myself and be heard with an open mind. Schedule contact with clients such as staffing[] and court would not be affected.
>
> 4. How will the requested accommodation be effective in allowing you to perform the essential functions of your job?
>
>> The accommodations would minimize the perceived threat to my safety. I would be confident that my work was accurate and detailed. I would feel productive and accomplish my job. I would still be guiding families and moving cases toward[] the family services they need to be successful in overcoming crisis and hardships.

(Doc. #29-1, at 33).

Prevost also sought treatment and evaluation in light of her PTSD symptoms. For example, Prevost took a fitness evaluation that confirmed she suffered from PTSD and further deemed that she was unfit for her position, unless DCF was able to comply with her accommodation request. (Doc. #17, at ¶18). In March 2012, Dr. Beskow indicated Prevost's PTSD symptoms affected her on-call duties as a DCF employee tasked with critical cases. (Doc. #29-4, at 6). Dr. Beskow recommended Prevost's work be supervised or eliminated for about three months. (Doc. #29-4, at 6). In July 2012, Dr. Kasprzak, a psychologist, recommended Prevost return to work as a CSI. (Doc. #33-2, at 1).

At some point, Prevost was removed from having direct contact with children. (Doc. #37-1, at 68). DCF did not heed to Prevost's accommodation request. Instead, DCF offered Prevost a different job as an electronic service specialist, a position that paid less and was located in a different county, but Prevost rejected this offer. (Doc. #29-4, at 8,

4

23). Prevost last day with DCF was sometime in September 2012. (Doc. #29-1, at 15; Doc. #29-4, at 63).

### Standard

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact" and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). An issue is genuine if there is sufficient evidence such that a reasonable jury could return a verdict for either party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Similarly, an issue is material if it may affect the outcome of the suit under governing law. Id.

The moving party bears the burden of showing the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In deciding whether the moving party has met this initial burden, the Court must review the record and all reasonable inferences drawn from the record in the light most favorable to the non-moving party. Whatley v. CNA Ins. Co., 189 F.3d 1310, 1313 (11th Cir. 1999). Once the Court determines that the moving party has met its burden, the burden shifts and the non-moving party must present specific facts showing that there is a genuine issue for trial that precludes summary judgment. Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). "The evidence presented cannot consist of conclusory allegations, legal conclusions or evidence which would be inadmissible at trial." Demyan v. Sun Life Assurance Co. of Canada, 148 F. Supp. 2d 1316, 1320 (S.D. Fla. 2001) (citing Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991)). Failure to show sufficient evidence of any essential element is fatal to the claim and the Court should grant the summary judgment. Celotex, 477 U.S. at 322-23. Conversely, if reasonable minds could find a

genuine issue of material fact then summary judgment should be denied. Miranda v. B & B Cash Grocery Store, Inc., 975 F.2d 1518, 1532 (11th Cir. 1992). "If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment." Allen v. Bd. of Pub. Educ., 495 F.3d 1306, 1315 (11th Cir. 2007).

## Discussion

### I. REASONABLE ACCOMMODATION

To establish a *prima facie* case of ADA discrimination, a plaintiff must show: (1) she is disabled; (2) she was a "qualified individual" at the relevant time, meaning she could perform the essential functions of the job in question with or without reasonable accommodations; and (3) she was discriminated against because of her disability. Lucas v. W.W. Grainger, Inc., 257 F.3d 1249, 1255 (11th Cir. 2001) (citing Reed v. Heil Co., 206 F.3d 1055, 1061 (11th Cir. 2000)). "An employer unlawfully discriminates against a qualified individual with a disability when the employer fails to provide 'reasonable accommodations' for the disability—unless doing so would impose undue hardship on the employer." Lucas, 257 F.3d at 1255 (citing 42 U.S.C. § 12112(b)(5)(A); 29 C.F.R. § 1630.9(a)). An accommodation is reasonable for ADA purposes only if it enables the employee to perform the essential function of the job. Lucas, 257 F.3d at 1255 (citing LaChance v. Duffy's Draft House, Inc., 146 F.3d 832, 835 (11th Cir. 1998)). A plaintiff bears the burden of identifying and demonstrating that an accommodation allows him to perform the essential functions of the job. Lucas, 257 F.3d at 1255-56 (citing Steward v. Happy Herman's Cheshire Bridge, Inc., 117 F.3d 1278, 1286 (11th Cir. 1997); Willis v. Conopco, Inc., 108 F.3d 282, 283 (11th Cir. 1997)). An accommodation may take the

form of job restructuring, part-time or modified work schedules, reassignment, and the like. Lucas, 257 F.3d at 1256 (citing 42 U.S.C. § 12111(9)(B); 29 C.F.R. § 1630.2(o)(2)(ii)).

The parties do not dispute Prevost is disabled, for ADA purposes, in light of her PTSD. The parties, however, dispute whether Prevost was qualified at the relevant time. Prevost argues she was qualified, whereas DCF argues she was not qualified. DCF does not take a position as to whether Prevost was discriminated against because of her PTSD, so for purposes of this summary judgment analysis, the Court will assume Prevost was discriminated against because of her PTSD. As such, the outstanding summary judgment issue is whether Prevost was qualified at the relevant time.

Upon review, the Court finds there is a material dispute as to whether Prevost was qualified at the relevant time. This is because there is a material dispute as to whether DCF could have made a reasonable accommodation and as to whether being the first to contact an alleged victim is essential to the CSI and CUS responsibilities. Reviewing the evidence in the light most favorable to the non-movant, here Prevost, there is evidence to support that Prevost could have continued working as a CSI or CUS employee but with her requested accommodations, and such requested recommendations were reasonable.

For example, Prevost's fitness evaluation showed she could continue working if her requested accommodations were given. (Doc. #17, at ¶18). Prevost's treating doctors believed she could continue working with limited supervision in March 2012, and then continue working outright in July 2012. (Doc. #29-4, at 6; Doc. #33-2, at 1). There is evidence indicating that some of the accommodations, such as not being the first point of contact in crisis situations, could have been reasonable at the time. This is because

Prevost's CUS responsibilities required her to attend court activities and in turn restricted her ability to attend to crisis cases that needed her attention within four hours. (Doc. #29-1, at 9). So it is arguable that DCF already had working procedures that heeded to Prevost's lack of availability due to CUS responsibilities in the event of a crisis case, and such procedures could have been extended to other crisis cases where Prevost's first point of contact could have triggered a PTSD episode. There is supplemental evidence that when cases are reassigned to different investigators for non-emergency reasons, such as the investigator has a personal relationship with the victim or accuser at issue, the reassignments typically occur the next day. (Doc. #37-2, at 11). There is also evidence of instances where initial interviews of potential victims are not conducted immediately. (Doc. #37-2, at 7-9).

As such, it is arguable that being the first-responder for each and every case is not an essential function to the CSI and CUS responsibilities. It is arguable that Prevost's request did not require DCF to restructure its system by creating a new position or eliminating essential functions of the job. Considering the individualized circumstances of DCF, this case presents a jury question as to whether Prevost was qualified. Holbrook v. City of Alpharetta, Ga., 112 F.3d 1522, 1527 (11th Cir. 1997) ("what is reasonable for each individual employer is highly fact-specific inquiry that will vary depending on the circumstances and necessities of each employment situation."). Since a reasonable jury can find in favor of Prevost, summary judgment is due to be denied on this issue.

   II.   RETALIATION

To establish a *prima facie* case of ADA retaliation, a plaintiff must show: (1) statutorily protected expression; (2) adverse employment action; and (3) a causal link

between the protected expression and the adverse action. Stewart v. Happy Herman's Cheshire Bridge, Inc., 117 F.3d 1278, 1287 (11th Cir. 1997) (citing Goldsmith v. City of Atmore, 996 F.2d 1155, 1163 (11th Cir. 1993)). If a *prima facie* case is established, then the burden shifts from the plaintiff employee to the defendant employer. Id. The defendant employer is then tasked with providing a legitimate non-discriminatory reason for its action that negate the inference of retaliation. Id. If the defendant employer meets its burden, then the burden shifts back to the plaintiff employee to establish the defendant employer's proffered non-discriminatory reason is merely pretext. Id.

The parties do not dispute that Prevost participated in protected expression, here ADA accommodations, and suffered from an adverse employment action, here termination. The parties, however, dispute whether there is a casual link between Prevost's protected expression and the adverse employment action, and the like. As such, the outstanding summary judgment issues are whether there is a casual link between Prevost's protected expression and the adverse employment action, whether DCF had a legitimate non-discriminatory reason for its action, and whether DCF's legitimate reason is merely pretext.

Upon consideration and in view of the light most favorable to the non-movant, here Prevost, the Court finds summary judgment is due to be denied. There is a casual link between Prevost's protected expression and her adverse employment. See generally Higdon v. Jackson, 393 F.3d 1211, 1220 (11th Cir 2004) (explaining causal link is determined broadly). After all, the Final Action to Dismiss from Employment, a letter from DCF to Prevost, clearly indicates DCF terminated Prevost for refusing to handle certain abuse cases in light of her PTSD symptoms and DCF inability to provide mutually

9

agreeable reasonable accommodations to Prevost in light of her PTSD symptoms.[3] (See Doc. #29-4, at 71-72). Prevost has demonstrated a *prima facie* case of ADA retaliation.

As an aside, since whether the accommodations Prevost's sought were reasonable accommodations for ADA purposes is a jury question, this jury question in turn bleeds to the retaliation analysis too. See generally supra. That is, since it is unclear whether DCF's refusal to provide such accommodations were reasonable, it is also unclear whether DCF had a legitimate reason to terminate Prevost. Cf. Lucas v. W.W. Grainger, Inc., 257 F.3d 1249, 1261 (11th Cir. 2001) (noting rejected ADA discrimination claims fare no better for retaliatory ADA claims). Here, DCF has not offered any other legitimate reason, and thus does not meet its summary judgment burden. Cf. Moore v. Hillsborough County Bd. of County Com'rs, 544 F. Supp. 2d 1291, 1307 (M.D. Fla. 2008) (defendant succeeded on summary judgment because it provided legitimate reason for termination, among other things).

The Court notes that although DCF offered Prevost a different job position, electronic service specialist, this position paid less and was in a different city, let alone county. (Doc. #29-4, at 64). In Prevost's view this position could be considered a demotion. Since Prevost did not voluntarily accept this demotion, it is arguable that DCF may have indeed retaliated against Prevost in light of her PTSD and request for reasonable accommodations. See Mattingly v. Univ. of S. Fla. Bd. of Trustees, 931 F.Supp.2d 1176, 1188 (M.D. Fla. 2013) (discussing when a plaintiff voluntarily accepts a demotion, then there can be no retaliation); but see Farrell v. Reno, 983 F. Supp. 1099,

---

[3] The term "mutually agreeable" is only used here because whether DCF provided a "reasonable" accommodation to Prevost is an outstanding factual issue. The Court does not hold two parties must agree on an accommodation for such accommodation to be "reasonable" for ADA purposes.

1108 (M.D. Fla. 1997) (discussing similar job offer in different city may not be considered as a demotion offer). Since a reasonable jury can find in favor of Prevost, summary judgment is due to be denied on this issue.

Accordingly, it is now

**ORDERED:**

Defendant Department of Children and Families' Motion for Final Summary Judgment (Doc. #29) is **DENIED**.

**DONE** and **ORDERED** in Fort Myers, Florida this 2nd day of July, 2015.

*Sheri Polster Chappell*
SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  All Parties of Record